IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD E. OBRINGER PAC, A PROFESSIONAL CORPORATION, d/b/a ADVANCED SURGICAL ASSOCIATES, on behalf of itself and all others similarly situated,<br><br>        *Plaintiff,*<br><br>  v.<br><br>CARDCONNECT CORP.,<br><br>        *Defendant.* | CIVIL ACTION<br>NO. 24-3034 |

**Pappert, J.**                                                                              September 2, 2025

<u>**MEMORANDUM**</u>

In 2024, Advanced Surgical Associates filed a class action lawsuit against CardConnect, its payment processor, over various fees. ASA was also a class member in *Kao v. CardConnect Corporation*, a class action that settled fee-related claims against CardConnect several years prior. CardConnect moves to enforce the *Kao* Settlement Agreement here, arguing that the Agreement's release provision bars almost all of ASA's current claims. For the reasons explained below, the Court grants the Motion as to Counts I and IV and denies it as to Counts II and III.

I

A

CardConnect provides payment-processing services to merchants who accept credit and debit card payments from customers. (Compl. ¶ 18, ECF No. 1; Ans. ¶ 18, ECF No. 9.) In 2016, Teh Shou Kao and his company, T.S. Kao, Inc., filed a class action

1

complaint against CardConnect. *Teh Shou Kao v. CardConnect Corp.*, No. 16-5707 (E.D. Pa. Nov. 1, 2016).

Kao alleged that neither CardConnect nor the relevant bank ever countersigned the agreement that Kao signed. (Am. Compl. ¶¶ 10–12, 26–28, 31–37, ECF No. 14, *Kao*, No. 16-5707.) It also alleged that the agreement that merchants sign "purports to integrate" a Program Guide composed of "dozens of pages of small print legalese" that is not signed by the necessary parties. (*Id.* ¶¶ 29, 33–35.) According to Kao, CardConnect then charged and increased fees based on the Program Guide, rather than the agreement the merchants signed. (*Id.* ¶¶ 38–45, 49–50.)

Based on this alleged practice, Kao requested declaratory and monetary relief. In Count I, Kao asked the Court to "declare that there is no binding, enforceable contract between CardConnect, on the one hand, and Plaintiffs and the Class members, on the other." (*Id.* ¶ 99.) Kao also sought declarations that "Plaintiffs and the Class members have not waived any rights to rely on the signature requirement" in their agreements and CardConnect "cannot now sign such contracts in an effort to make them effective." (*Id.* ¶ 100.) In Count II, Kao stated a claim for unjust enrichment and sought restitution and disgorgement for "improperly assessed fees." (*Id.* ¶¶ 102–09.) And in Count III, Kao brought, in the alternative to Count II, a claim for breach of contract requesting damages for allegedly unauthorized fees. (*Id.* ¶¶ 110–20.)[1]

Following a dispute over how to proceed with discovery, the parties filed briefs addressing whether the parties had an express binding contract. (*Kao*, No. 16-5707,

---

[1] In Count IV, pleaded in the alternative to Counts I and II, Kao asked the Court to declare certain provisions of the Program Guide unenforceable and enjoin their enforcement. (*Id.* ¶¶ 122, 124–25, 133.)

ECF Nos. 40, 44–46.)[2]  After the Court determined they did not, (Contract Terms Mem. Op. at 1, *Kao*, No. 16-5707, ECF No. 68), the parties briefed their proposed implied contract terms, (*Kao*, No. 16-5707, ECF Nos. 60–61, 65–66).  The Court then held that under the terms of the parties' implied contract, CardConnect was limited to charging the fees expressly listed in the agreement Kao signed and could not unilaterally add fees or increase rates.  (Contract Terms Mem. Op. at 5–6.)  The Court denied CardConnect's subsequent motion for reconsideration.  (Reconsideration Mem. Op., *Kao*, No. 16-5707, ECF No. 97.)

B

Kao moved for preliminary approval of a class action settlement in June of 2020, (ECF No. 112), which the Court granted on July 7, 2020, (ECF No. 113.)  The Court granted final settlement approval in February of 2021.  (Final Approval Mem. & Order, ECF Nos. 124 & 125.)

The *Kao* Settlement Class consisted of "[a]ll CardConnect Merchants that paid at least one of the Subject Fees from November 1, 2012 through the date of Preliminary Approval [July 7, 2020]."  (Settlement Agrmt. § 3.1, *Kao*, No. 16-5707, ECF No. 112-2.)[3]  CardConnect agreed to pay "up to" $7.65 million to settle the suit.  (*Id*. § 9.1.)[4]  And the Class agreed to release CardConnect

---

[2]   A related suit against CardConnect was consolidated with *Kao* in 2017.  (Consolidation Order, *Kao*, No. 16-5707, ECF No. 41.)  The Court refers to these prior plaintiffs collectively as "Kao."

[3]   "CardConnect Merchants" included "any merchant that became a customer by signing an agreement for processing services with [CardConnect] that is governed by Pennsylvania law," with certain exceptions not relevant here.  (Settlement Agrmt. § 2.2.)  The exceptions to the class, *see* (*id*.), are not relevant.

[4]   One-third of this amount went to pay class counsel's fees and costs.  (Final Approval Order ¶¶ 31–32.)  This total amount also covered incentive awards and administrative costs.  (*Id*. ¶ 33; Settlement Agrmt. § 9.1).  Of the net settlement proceeds, one-third was automatically distributed

> from any and all liabilities, rights, claims, demands, actions, suits, causes of action, damages, costs, attorneys' fees, losses, and remedies that have or could have been brought, alleged, or asserted, are currently pending or were pending, whether known or unknown, suspected or unsuspected, asserted or unasserted, existing or potential, liquidated or unliquidated, under or pursuant to any statute, regulation, common law, or equity, that result from, arise out of, are based upon, or relate in any way, directly or indirectly, to: (a) the allegations in the Action, (b) the defense of the Action; (c) all facts which relate to or arise from the Subject Fees or the Action; (d) the acquisition or receipt of payment card processing services; (e) the assessment of any fees or charges for the processing of credit or debit cards; and (f) any fees or charges imposed by CardConnect or any of its affiliates, from the beginning of the Class Period [November 1, 2012] through Preliminary Approval [July 7, 2020] ("Released Claims").

(*Id.* § 10.1.) The Agreement further made clear that "the possibility that [undiscovered or underestimated] claims exist . . . was explicitly taken into account by each Party in determining whether there was adequate consideration in exchange for entering into this Agreement . . . ." (*Id.* § 10.2.) The release terms "are to be broadly construed in favor of a complete resolution of all claims that were actually raised in or could have been raised in" the suit. (*Id.* § 10.9.) But the Agreement also provided that "[n]othing in this . . . Agreement will release or otherwise affect any right of the Releasing Parties to contest for any reason any statement sent by [CardConnect] after Preliminary Approval [on July 7, 2020]." (*Id.* § 10.6.)

C

ASA provides "physician assistant services" to surgical practices. (Compl. ¶ 44.) Richard Obringer, a licensed physician assistant and the principal owner of ASA, signed an agreement with CardConnect on ASA's behalf on April 17, 2018. (*Id.* ¶¶ 11,

---

via check to the nearly 44,000 current class members on a *per capita* and *pro rata* basis. (Settlement Agrmt. § 9.2.1; Final Approval Mem. at 5.) The remaining two-thirds was allocated to claims from former class members. (Settlement Agrmt. § 9.2.3.) Fewer than 2,900 of the 67,000 former class members filed claims. (Final Approval Mem. at 8.)

44, 46, 49.) After CardConnect charged ASA various allegedly unauthorized fees, (*id.*
¶¶ 55–59), ASA filed suit.

Like Kao, ASA alleges that merchants sign a "Merchant Agreement" that identifies certain fees, only to be charged "junk fees" pursuant to the Program Guide. (*Id.* ¶¶ 5–7, 26–28, 31.) According to ASA, CardConnect does not sign the Merchant Agreement, and most merchants, including ASA, have never been given the Program Guide. (*Id.* ¶¶ 20, 22, 24, 26, 30, 51, 53, 64.)

ASA's causes of action are also similar to Kao's. In Count I, ASA requests a declaration that "there is no express contract between CardConnect and Plaintiff (or the Class members), and that the Program Guide is not a binding contract enforceable against Plaintiff or the Class Members." (*Id.* ¶ 82.) ASA also asks the Court to "find that CardConnect . . . cannot now, belatedly, sign the Merchant Agreements to give them effect." (*Id.* ¶ 83.) Counts II and III, as in *Kao*, are pleaded in the alternative and state claims for unjust enrichment and breach of contract. (*Id.* ¶¶ 86–92, 93–103.) Finally, Count IV alleges a violation of the Nevada Deceptive Trade Practices Act. (*Id.* ¶¶ 104–11.)

CardConnect answered the Complaint and the case proceeded to discovery. (ECF Nos. 9, 16.) The parties' discovery disputes and extensive correspondence on the effect of the *Kao* settlement led to CardConnect's pending Motion. CardConnect maintains that the release in the *Kao* settlement agreement bars most of ASA's claims and asks the Court to "dismiss[] Counts I, II and IV in their entirety and Count III to the extent it relates to" three of the four fees ASA alleges are unauthorized. (Def. Mem. in Supp. of Mot. at 19, ECF No. 31-1.)

5

II

CardConnect seeks to enforce the terms of a class action settlement agreement the Court approved in its final judgment resolving an action brought in federal court under Rule 23.  *See* (Final Approval Order).  In effect, it asks the Court to determine the preclusive effect of the *Kao* judgment on a motion for partial summary judgment.[5] It is well-settled "that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001).  And ASA agrees that it was a member of the *Kao* settlement class.  (Pl. Resp. to RFA No. 1, ECF No. 31-6.)  So the only remaining question is whether the *Kao* final judgment, to which ASA is bound, precludes ASA's current claims.

A settlement agreement can release claims that were not brought in the action, and even those that could not have been brought, so long as the "the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement."  *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011).  Ultimately, "the bounds of preclusion after a settlement" are determined by the "express terms" of the settlement agreement.  *Toscano v. Connecticut General Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008); *see also In re Prudential*, 261 F.3d at 366–69 (scrutinizing release terms); *In re Diet Drugs*, 369 F.3d 293, 310–12 (3d Cir. 2004)

---

[5]     The parties do not frame the Motion this way, but the difference ultimately has no effect on the parties' proposed standard of review: the parties agree that the Court should apply a summary judgment standard and that Pennsylvania law should be applied to discern the meaning of the Agreement.  *See* (Def. Mem. at 12; Pl. Resp. in Opp. at 10, 24–25, ECF No. 37; Def. Reply at 11 n.6, ECF No. 38).  Yet the cases the parties cite for the review and posture of the Motion are not directly on point.  CardConnect is not simply asking for enforcement of a private contract, and ASA is not arguing that the Agreement itself is invalid, unenforceable or not binding.

(same).  Courts discern those terms "pursuant to general rules of contract interpretation."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 282 n.50 (3d Cir. 2014) (quoting *Miller v. Ginsberg*, 874 A.2d 93, 99 (Pa. Super. Ct. 2005)).

### III

The goal of contract interpretation is to determine the parties' intent as expressed in the contract's language. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983); *Blunt*, 767 F.3d at 282 & n.50.  Where the language of the agreement is clear and unambiguous, courts must give effect to its plain meaning.  *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006); *Blunt*, 767 F.3d at 282 n.50 ("[I]f the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used.") (quoting *Miller*, 874 A.2d at 99).  Contract terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463 (Pa. 2015) (quotation omitted).

"Courts are not to assume that the language contained in a contract was chosen carelessly or that the parties were ignorant of the meaning of the language they utilized."  *Kmart of Pennsylvania, LP v. MD Mall Assocs., LLC*, 959 A.2d 939, 944 (Pa. Super. Ct. 2008).  Further, courts must interpret contracts to give effect to all their provisions. *Commonwealth ex rel. Kane*, 129 A.3d at 464 ("[O]ur Court will not interpret one provision of a contract in a manner which results in another portion being annulled.") (quotation omitted); *see also Miller* 99 ("[W]e may not ignore otherwise clear

7

language merely because one of the parties did not anticipate related complications prior to performance.") (quotation omitted).

IV

A

The release contained in § 10.1 is very broad. It covers all claims, "whether known or unknown, . . . existing or potential, . . . that result from, arise out of, are based upon, or relate in any way," to, *inter alia*, "(a) the allegations in the Action, . . . (d) the acquisition or receipt of payment card processing services; (e) the assessment of any fees or charges for the processing of credit or debit cards; and (f) any fees or charges imposed by CardConnect[.]" (Settlement Agrmt. § 10.1.)

The Third Circuit Court of Appeals has not hesitated to uphold broad releases, including ones that cover future or unaccrued claims. *See, e.g.*, *Blunt*, 767 F.3d at 281–82 & n.51; *Freeman*, 445 F. App'x at 580; *In re Prudential*, 261 F.3d at 367–68. The courts' authority to broadly release claims "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Prudential*, 261 F.3d at 366 (quotations omitted). Under this standard and in light of the breadth of § 10.1, all of ASA's claims — which stem from a dispute over the Merchant Agreement and Program Guide at issue in *Kao* — face a significant hurdle.

To surmount it, ASA repeatedly highlights § 10.6, (Pl. Resp. at 5, 8, 11–12, 19, 22, 23) — a provision CardConnect never once mentions, let alone addresses. Section 10.6 begins by reiterating the release from § 10.1: "Plaintiffs and all members of the

Settlement Class agree that this Settlement Agreement . . . is[] a covenant . . . not to sue . . . CardConnect for any Released Claims." (Settlement Agrmt. § 10.6).

But the provision goes on to state that "[n]othing in this paragraph or Agreement will release or otherwise affect any right of the Releasing Parties to contest for any reason any statement sent by Defendant after Preliminary Approval." (*Id.*)

The Court cannot ignore this provision, which is unambiguous: "*Nothing* in . . . the Agreement *will release or otherwise affect any right* . . . to contest *for any reason* any statement sent by [CardConnect] after [July 7, 2020]." (*Id.*) (emphasis added). Section 10.6 expressly preserves for class members all rights to contest statements sent after preliminary approval on any basis, including a basis that § 10.1 would have otherwise precluded. To conclude otherwise would defy the plain meaning of the provision and turn "nothing" into "something."

The fact that a settlement judgment *can* release certain claims does not mean it *must* do so. And the judicial economy that would be achieved by a more comprehensive settlement does not override the principle that the terms of the agreement control the bounds of preclusion. *Cf. In re Diet Drugs*, 369 F.3d at 310–11 (distinguishing *In re Prudential* based on "the language in the Diet Drugs release").[6]

---

[6] This principle explains why CardConnect's concern about "eviscerate[ing] the Kao Settlement Agreement" and "chilling . . . class action settlements nationwide," (Def. Reply at 5), is overwrought. Courts have long enforced broad settlement releases. Accordingly, parties are free to bargain — and pay — for such a release with the assurance that it will be judicially enforced. But that is not what happened here. Instead of leaving the release terms to only those provided in § 10.1, or negotiating for the right to contest future statements on specific grounds, the parties' negotiations resulted in § 10.6, an unambiguous reservation of rights with no exception to the reasons for which a post-*Kao* settlement can be contested. The Court will not assume that the parties were careless or ignorant when crafting this language. *Cf. In re Prudential*, 261 F.3d at 369 ("When the Lowes reviewed the Release . . . they surely must have realized that, even though they could exclude certain policies from the settlement while including others, doing so would jeopardize their ability to prove claims relating to the Excluded Policies. The district court was not willing to release them from their bargain; neither are we.").

9

B

The threshold question for each of ASA's claims is whether it contests a statement or statements that CardConnect sent after July 7, 2020. If so, the claim falls within § 10.6 and is not barred. If not, the next question is whether the claim falls within § 10.1; if it does, the claim is barred.

1

Counts II and III fall within § 10.6 and are not barred by the Agreement. *See* (Compl. ¶¶ 57–59) (alleging CardConnect charged ASA unauthorized fees in statements from January, February and March of 2024); (Compl. ¶¶ 65, 68) (starting the proposed Class Period on July 8, 2020); *see also* (Pl. Resp. to Def. Interrog. Reqs. No. 4, ECF No. 31-8) (identifying disputes related to statements from July of 2020 to August of 2024).

According to ASA, it either (a) did not have a contract with CardConnect as of July 8, 2020 and certain fees CardConnect charged after that date constituted unjust enrichment, or (b) did have a contract with CardConnect as of July 8, 2020, but the fees CardConnect charged after that date violated the contract's terms. *See* (Compl. ¶¶ 86–103). In either case, ASA contests, and seeks restitution or damages for, only statements that CardConnect sent after preliminary approval was granted in *Kao*. That proving these claims may require relitigating matters disputed in that prior action does not place the claims outside of § 10.6, which permits contesting post-preliminary statements "for any reason."

2

Count IV does not clearly fall under § 10.6. Proving a violation of the NDTPA requires showing that a defendant's act of consumer fraud caused damage to the

10

plaintiff.  *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).  Post-*Kao* statements might be used to prove damages and so the completion of an NDPTA violation, but that does not make ASA's claim a challenge to the statement, rather than the earlier, allegedly deceptive conduct.  In a claim for unjust enrichment or breach of contract, the post-*Kao* statement charging an (allegedly) unauthorized fee is itself the alleged unjust enrichment or breach.  In a claim under the NDTPA, however, the statement is not *per se* objectionable, and sending the statement was not the type of deceptive conduct the law forbids.  In other words, the statement is not itself at issue; it is only the result of the (allegedly) unlawful conduct.

ASA argues that claims for NDTPA violations nonetheless are not barred because the Agreement releases claims that were or "could have been brought" and claims predicated on post-*Kao* statements had not yet accrued.  (Pl. Resp. at 11–13, 15–16); (*id.* at 16) ("The *Kao* Settlement release . . . applies to claims—not facts.")  But the Agreement *does* apply to a class of then-unrealized claims predicated on certain facts.  Specifically, § 10.1 releases "claims . . . whether . . . existing or *potential, . . . that result from, arise out of, are based upon, or relate in any way*, directly or indirectly, to: (c) all facts which relate to or arise from the Subject Fees or the Action; [and] (d) the *acquisition* . . . of payment card processing services[.]"  (Settlement Agrmt. § 10.1) (emphases added).  ASA's NDTPA claims are based upon events that occurred around the time ASA signed the Merchant Agreement in 2018.  *See* (Compl. ¶¶ 46–50, 109–111).  Accordingly, the NDTPA claims in Count IV are barred by the Agreement.

Nor does Count I contest a post-*Kao* statement.  In Count I, ASA seeks "a declaration that there is no express contract between CardConnect and Plaintiff (or the

Class members), and that the Program Guide is not a binding contract enforceable against Plaintiff or the Class Members." (Compl. ¶ 82.) As an initial matter, the relief sought in the Complaint could have been obtained in *Kao*: a declaration that "there is no binding, enforceable contract" between the *Kao* Class and CardConnect, (*Kao* Am. Compl. ¶ 99), would have been predicated on the invalidity of the Merchant Agreement and Program Guide. Even if a declaration concerning the parties' post-*Kao* relationship could not have been obtained in *Kao*, *see* (Pl. Resp. at 15) (describing Count I as "a claim for a declaration of the parties' rights and obligations as of July 8, 2020 and beyond"), a declaratory judgment claim founded on the absence of a contract because of the same contractual flaws alleged in *Kao* is the sort of "potential" claim inextricably related to matters delineated in § 10.1. Because Count I falls within § 10.1 but not § 10.6, it is barred by the Agreement.[7]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[7] That said, the fundamental question at issue in this claim — "What governs the parties' relationship as of the statement sent on X date?" — must be answered in order to determine whether ASA is correct that CardConnect was unjustly enriched or breached the parties' contract via those statements. As discussed above, the fact that resolving this question may require raising issues litigated in *Kao* does not pose a barrier to challenging post-*Kao* statements because § 10.6 reserved the right to challenge those statements "for any reason," which necessarily includes reasons such as unjust enrichment and breach of contract. As also noted above, whether and how the Agreement affects the answer to the question about the nature of the parties' relationship is beyond the scope of CardConnect's Motion.